Good morning, Your Honors, and may it please the Court, Peter Steinman on behalf of Appellant North American Bancard. This appeal presents two fundamental issues, both requiring reversal. First, the District Court committed reversible error when it denied Defendant and Appellant North American Bancard, or NAB, motion to compel binding arbitration even though plaintiff and respondent failed to sustain his burden of unequivocally denying the existence of the arbitration agreement and submitting immiscible evidence to support that denial. The only evidence before the District Court was that respondent, in applying online for the service that he actually received, hit a button, quote, I have read and agreed the terms and conditions on the application, was provided with an opportunity by a hyperlink to go to the page that contained those terms and conditions, and was provided with five documents. By virtue of the fact that he hit the button, I have agreed to, I have read and agreed to, he agreed to all five. Respondent did not submit any evidence below. Therefore, the court only had one inference and one record that respondent did exactly what he was directed to do on the website. The dispositive authorities cited to both the District Court and this court hold that the bare submission of a legal argument is not sufficient, and on that ground alone, NAB's motion should have been granted. Respondent concedes this determinative issue by failing to address it, much less contest it, in his answering brief. The second issue requiring reversal is that the District Court erred by holding that the relevant user agreement could be ignored in favor of another agreement, the Terms and Conditions of Merchant Service Agreement, or MSA, because the first few lines of the text of that second document appeared below the hyperlink to the relevant document, the user agreement that contained the binding arbitration provision. But what do we have in front of us that indicates that McGee actually assented to the arbitration clause? Thank you. Well, Your Honor, you have, the only evidence that this court or the court below had was the declaration of Terry Harwood. That declaration starts on page 52 of the record. But specifically, I'd like to draw the court's attention to page 55 of the record. What is that? That page is the first page of the website entitled, How Will You Use Pay Anywhere? All right. I have that at ER-60. Okay. Thank you. If you go down to the bottom of that page, there's a checkbox, and as set forth in Ms. Harwood's declaration, again, the only evidence before the court, the plaintiff, respondent, was required to click the I have read and agreed to the terms and conditions button. Okay. So he clicked that button. But as I understand it, the arbitration clause is not in the terms and conditions button. It's in the some other button. I guess we have to go to the terms and conditions. And then there's another. The arbitration is in the user agreement, right? Yes, Your Honor. Is there any button to click assent to the user agreement? Well, no, there isn't. And there are many cases, including, I believe, the case that Your Honor sat on, when in which it was held that at least constructive notice. There was a, you check the thing, and the arbitration was in the very first thing you got to. Right. So there are, it does. It was hidden somewhere else. Like you have to, I mean, I don't think I would be unnoticed that I had to read all, you know, the card acceptance guide. I mean, is the arbitration agreement in the card acceptance guide? Well. Pay anywhere pricing? I mean, you have to read through all of that to find out? I understand, Your Honor. Two points. First, if the respondent did not understand or did not read the user agreement that contained the binding arbitration provision, he could have put in a declaration saying so. The second point is, is that there are many cases, including Meyer v. Uber in the Second Circuit, which applied California law that held that just that type of web page or web application process where you have to click more than one link, which I think is what Your Honor is talking about. So you have to click a link that takes you to a terms and conditions page, and then you have to click another link, which is the user agreement, which has the binding. It seems like you're hiding the arbitration agreement. It seems like your client, not you, your client, Your client is going out of its way to make sure that the person doesn't see the arbitration agreement. Well, respectfully, I disagree, Your Honor. There are numerous agreements that a merchant has to acknowledge and agree to in this type of transaction. They're all listed, and by clicking that button, he's agreed to them. And he had every opportunity, as this and other courts have held, every opportunity to review those agreements. Once he was given that opportunity, assuming that we get by the first factor, which is actual notice, which the only way he can contest would be to submit a declaration or some other evidence, which he did not. But once you get, once you have a reasonable opportunity, and he did, we believe, then he's at least on inquiry notice, and that is sufficient. The actual term, the actual arbitration provision is clearly set forth in the user agreement. I have another question for you that's kind of, I don't know if the parties argued this, but why does the user agreement govern when the merger clause that's in the terms and conditions incorporates the merchant service agreement and the terms and conditions and says that those two documents supersede all other documents? Well, Your Honor, again, getting by the actual notice, which we don't believe that respondent did, but the reason why is the very terms of the MSA. Whose burden is it to show, I mean, before you get to that, whose burden is it to show actual notice? Well, once we put prima facie evidence of the existence of the relevant web page, then it's similar to a summary judgment standard, and at that point the party resisting arbitration, here the respondent, has an obligation to submit at least two things. He's got to say unequivocally, I deny the existence of the agreement in one form or another, and he's got to submit evidence. He didn't do either, and I think the reason why he didn't do either is because he couldn't truthfully do it. Mr. Stein, what's your authority for that statement you just made that he has to come forward that's similar to the summary judgment standard? What's your authority for that? Well, Your Honor, I think that's been the rule for over 70 years, starting with Alma Sayers, which we cited in both the opening and reply brief. That's 148 F. 2nd, 625 at 628 2nd Circuit, 1945. That case has been followed in virtually every district. I'm sorry, every circuit, including this one. We've cited other cases, Central District and Northern District of California cases, including Chime Institute, Graf V. Match, and Gordas V. Uber Tech. They all follow that line. And the district court didn't agree with you? Well, the district court, two things happened. First of all, the district court took it under submission, and the district court's ruling was based on an argument, really, that Respondent didn't develop. Had we been able to at least argue, we would have put forth the fact that there is no evidence before the record, before the judge, of anything other than Respondent did exactly what he was supposed to do on the website. He's applying for a credit card reader, which is like a little dongle that would attach to a cell phone or a tablet, and then he has a service, and the service transmits all those credit card processes. So he had to know that, and the website provided, that in accepting those, the dongle or the credit card reader and the service, that he was going to accept an agreement, and the terms and conditions are laid out in those hyperlinks. So your theory is once he clicked on user agreement, the burden shifted? Well, close. Our theory is that once he clicked on terms and conditions, he unqualifiedly admitted that he agreed to every single one of those documents. And if he's going to oppose a motion to compel, then he has the burden to put forth evidence that he didn't. And I think that's what those cases hold. I think it's fairly clear those cases hold that. He didn't satisfy the burden because for whatever reason, and again, we can only suppose. And I missed this. The district judge ruled on something that wasn't raised? Well, the district court held two things, really. The district court held that because, as Judge Wardlaw said, because the website is constructed so it requires two clicks rather than one, that that wasn't sufficient. And the court also held that the MSA was inconsistent with the user agreement. The first issue has been resolved by the Second Circuit in Uber v. Meyer. Right. Just two clicks is not sufficient to ding or deny notice. As to the second issue, the very terms of the MSA indicate that it doesn't apply. It says that you have filled out a global merchant agreement. Plaintiff responded, did not fill out that agreement. In fact, if the court would like to look at, there's only three critical pages of the record. Those pages are 55, which is the home page, the application page, which is 58, and then 63, which is the terms and conditions page. Pardon me. In the very few lines that are available on the MSA, which is below the hyperlinks to the other documents including the user agreement, it says this document, terms and conditions of merchant service agreement, accompanies the document global payments merchant application. Well, he didn't submit or fill out that document. What he did is he submitted and filled out, first on page 55 of the record, the pay anywhere, how will you use pay anywhere page, and then he went to page 58 of the record, which is the actual application for the pay anywhere application. There's nothing about global in any of those documents, and it doesn't apply. The reason why that document is there is because if a merchant, like respondent, reached a certain level of processing, over $1 million a year or $100,000 a month, then his processing activity would be switched, but not until then. And critically, again, there is no declaration, there's no evidence that he was confused about this. Well, I haven't heard a good answer to my question about the merger agreement, which does not include the user conditions that includes the arbitration clause. Your Honor, I think that the answer to that is really the same. It's part of the MSA, and again – Wait, what's the MSA? I'm sorry. The MSA is the terms and conditions of merchant service agreement. If you go to page 63 of the record – Okay, that's the terms and conditions. That's MSA. That's right. Okay. I don't know. It doesn't sound like MSA to me. I'm sorry. None of the – our position is, and I think it's a reasonable position, and I think it's the right position, obviously, is that because the MSA on its face does not apply, that merger clause doesn't apply. It would apply if and only if he had filled out – the respondent had filled out the global payments merchant application. But he didn't, and there's no evidence in the record that he did. And, in fact, in his complaint, he alleges just the opposite. In his complaint, the only – it's not really evidence, but the only thing that we can tell from what plaintiffs said. In his complaint, he alleges that he applied for the pay anywhere mobile card reader and service. I can certainly give you a cite to that. That is record page 120, which is the complaint in paragraph 3. It doesn't say anything about a global merchant service application or global merchant services. Okay. Thank you. Do you want to save any time? I would, Your Honor. Thank you. Okay. Then you've got about a minute. Thank you, Your Honor. Good morning. May it please the Court. I'm Eric LaGuardia, appearing on behalf of Gerald McGee. Before I go into my prepared remarks, are there any questions or issues the Court would like me to address? Well, what about the lack of a declaration saying that he was not on notice or he had not looked at the – that McGee had not looked at the user agreement? Certainly, Your Honor. We believe and assert that that is a red herring argument. The evidence that's required are the documents themselves here. The burden is on the party asserting an agreement to prove and establish the agreement. It's not McGee's burden to do that. And so the district court had the operative documents before it and found as a basic matter of fundamental contract formation that there was not the requisite assent because of the confusing nature of the design and content of the website and agreements under WIN. And, Your Honors, there is actually instructive Ninth Circuit precedent on this issue of assent. In Knutson v. SiriusXM Radio in 2014, the Ninth Circuit actually reversed notably this same district judge, but there they reversed his granting a motion to compel. In that case, the Ninth Circuit reversed the granting of the motion to compel based on a lack of assent. In the Ninth Circuit opinion in 2014 under Knutson, instructive language I'll quote here is useful in this case. And the court is actually quoting California appellate court and it's regarding California contract law, but the assent is essentially the same in all of these. So it says, quote, If a party wishes to bind in writing another to an agreement to arbitrate future disputes, such purpose should be accomplished in a way that each party to the arrangement will fully and clearly comprehend that the agreement to arbitrate exists and binds the parties thereto. So moving from there as the standard, if you dive into the minutia of these contracts, which I think is important to do, because the parties in their briefing obviously describe the documents as the best they can, but if you actually turn to the documents, and I actually had it at 60 as you did as well, so we can either turn to 60 or 55, whatever you prefer. You can see that this is what, and the standard is what a reasonably prudent person would understand. So if you do that, there's a box. Nobody disputes this. I have read and agreed to the terms and conditions, quote. There is nothing in that that says user agreement. So from there you click what's a link, the terms and conditions. It's important to remember that what we're seeing is representation of a web page as well. So then you would turn to where that page takes you, which is at 63 to 79. It appears in multiple places, but that is where it can be found here. What does the reasonably prudent person next encounter? They encounter a web page represented here. Now, our opponent states that there are just a few lines at the bottom of the page, but what this is actually showing you is a web page where you can just scroll down. If you scroll down, there are 15 plus pages of detailed terms, and above those, before you even get there, are the words pay anywhere terms and conditions. That's where you go to from terms and conditions. Then there's, as you suggested, Your Honor, a card acceptance guide, and you have the option of viewing that acceptance guide by clicking here. Then there's a pay anywhere pricing. That's no sort of terms and conditions. That's some pricing. View the pricing here. You can click on that. Next, we have the user agreement, which, again, has the same thing. View the user agreement here, and then there's a terminal agreement view here. Then, in full, are the pay anywhere terms and conditions of merchant service agreement. Mr. McGee, like everyone that is signing up for this service, is a merchant. It is not reasonable to expect them to think, when they encounter this, oh, none of this applies to me. I'm going to click on the user agreement. This is without even getting into the conflicting choice of law terms in each and the conflicting merger clauses, which state, stop looking after this. We're done here. Nothing else is part of this agreement. Hopefully I answered your question. I sort of launched back into everything. But my response is that the only thing that is needed here, the only thing the district court required and needed are these documents to find whether there's assent in this case. And we think that this court should find the same. Your argument is based on, let's say, the overall reading of all these pages, like how many steps it takes to get to this agreement or that agreement. And I think you used the word reasonable several times. Now, making those determinations about the agreement, is that a question of law or a question of fact? Overall, whether it's reasonable to incorporate. I think in our case, incorporate the arbitration agreement in this matter. Is that what it amounts to? Yes, Your Honor. Well, I would state that, yes, it's a question of law based on a specific fact. So in Winn, it's stated that the validity of the agreement, quote, turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract, which depends on the design and content of the website and the agreement's web page. So then you have to look at the design and content. And here, both are unclear and conflicting. Well, I understand those are the questions, but my question is a little different. Is that a question of fact or a question of law? If it's a question of fact, it seems to me in this case it's fairly disputed. Yes, I would agree, Your Honor. If it's disputed, you can't decide it on summary judgment, can you? I would agree with that, Your Honor. Now, just a minute, one more question. Sure. Now, is it in Nguyen or somewhere else, what's your authority to say this ultimate question is a question of fact? Can you sign any case for that proposition? I believe that's in our brief in terms of the standard of review. I think it's a conclusion of law whether a contract was formed. Oh, I'm sorry, maybe I misunderstood. Yes, whether or not there's contract formation, I would say, is a question of law. That's correct, whether there's assent there or not. Perhaps I'm confusing the facts that form the basis of that. So I would agree, Your Honor. Well, are there disputed facts in this case? No, there are not disputed facts in terms of what the operative documents are. But those documents have to form the requisite notice to form assent. So if you look at Nguyen, again, it says the validity. The first thing you have to do is find an agreement. There has to be a contract that's formed. And to do that, it turns on whether the website puts a reasonably prudent person on inquiry notice of the terms of the contract, which depends on the design and content of the website and the agreement's web page. Those were before the district court, and they found, based on those facts, that as a matter of law, there is no assent in this case. When you say those facts, you're really referring to the district court's reading and review of the agreement, right? That's correct, Your Honor. And I would also point out that even if you believe it's a close call, under basic contract principles, obviously ambiguity is construed against the drafter. Here we have NAB chose this design. They chose these terms. They could have done several things. The district court even points a couple of those out that they did not do. Instead, they did what is represented in the record and what is confusing to the reasonably prudent person. So even if you think it's possible, it has to be construed against the drafter. It's a contract of adhesion that he was forced to take or leave, and it's not sufficiently clear. Mr. LaGuardia, why is Mr. Steinman wrong? He says that this is akin to summary judgment. His pleading, as I get it, shifted the burden to you to come forward with something. Is that the way you understood his argument? I believe so. And he tells me that's been the law since 1945. Well, that is not how we understand the standard or authority. Our understanding is that the burden under, again, if you look at Knutson in 2014, the court states that the burden to establish a valid agreement by a preponderance of the evidence is on the parties seeking to compel arbitration. So they're the ones that have to establish the agreement. So they have to establish through facts and evidence the legal conclusion that assent exists. The district court found they did not. Right. I'm sorry. Go ahead, boss. You just used the term, I guess Knutson used it, this has to be established by a preponderance of the evidence. That seems like a standard for a factual finding. I mean, I don't think you have to establish a proposition of law. You don't say by a preponderance of the evidence to you. It's either established or not established. So it seems like a question of fact and not a question of law. Well, perhaps I can clarify. So the facts here are not in dispute, and the evidence is that, and is not disputed by Mr. McGee, is that the box was clicked. What the dispute is about is whether someone can make sense of that to form a contract thereafter. So there are laws and facts at play. Mr. LaGuardia, your point is there's no prima facie in the pleading and the clicking of assent. Correct.  Correct. Thank you, Your Honor. And isn't this case pretty much controlled by Winn that says that what we look at is the website? I would agree with that, Your Honor, yes. In the absence of evidence that the website user had actual knowledge of the agreement. And here there's no evidence that they had actual knowledge. Exactly, Your Honor. And so our opponent actually mentioned that, and I think this is in the documents at least before the district court, that their position is that Mr. McGee agreed to everything when he clicked that box that he finds. So as a basic matter of policy, I just think it would be a terrible precedent to say that you can have this kind of confusion and mess be found to have assent in a binding agreement to force someone to arbitration here. But at the same time that Mr. McGee has supposedly agreed to all of these things, he's supposed to know whether he's a user or a merchant, and that a document that's entitled Terms and Conditions of Merchant Service Agreement should be ignored, and instead a user agreement that's found at a link that says user agreement applies to him. Based on apparently some application that he is supposed to know is distinct from some other merchant application. It's not reasonable, Your Honors. And I see that I'm running out of time, so I can reserve for rebuttal if there are no further questions. All right. You don't get rebuttal, but I don't think there's any further questions, right? All right. Thank you, counsel. Thank you, Your Honor. Thank you, Your Honor. I know I only have a short amount of time. Let me just hit on some very salient points. First of all, I think that when is certainly a relevant case. I don't think it controls, because in when there was evidence. Here there wasn't. Opposing counsel. We said that in when we held it, the form that Barnes & Noble used was not adequate to demonstrate a contract. Right. But, Your Honor, you held that, or the panel held that, because that was more of a browse-wrap agreement than a click-wrap. I don't find these labels, browse-wrap versus click-wrap, very helpful. Understood. Well, okay. So the difference between that agreement and this agreement, as discussed in many of the cases in our brief, including Meyer v. Uber, is that here you had a link and a box that the user had to click, I have read and agreed to the terms and conditions, before he or she could go on to the registration page to purchase or obtain the service. That was not the case in Barnes & Noble. Moreover, I think Your Honor put forth the salient point, which is absent evidence of actual notice. Here, there is no evidence either way because. So it's absent. Well, it's not. No, I think the law is that when we brought, when a party brings a motion to compel binding arbitration and puts forth the prima facie case, which I believe we did, it then shifts to the other side. You didn't put forth a prima facie case of actual knowledge. Well, the prima facie case was, I believe it was. The prima facie case was that if you go through the website, and again, it starts on. We've seen it many times. If you go through the website, he can't go through those steps, a user, he or she, cannot go through those steps without clicking on the acknowledging button. But see, our point is he's a merchant. I understand. He is a merchant. Okay. Well, let me go to that then, Your Honor. He may be a merchant, but in no sense is he a merchant as defined in this agreement, which is the MSA, the agreement that's at the bottom of the page. So because he did not fill out a global payment merchant application. Now, he could have explained in a declaration that he was confused. He could have explained in a declaration. Why does he have to explain that? Because it's his. I'm sorry. You have to prove that there is an agreement, and the district court found you did not prove there was an agreement. Well, all right, two points, Your Honor. I don't think, I think that the burden really was on him, and opposing counsel cited the Knutson case, which is not in any of the briefs. I haven't read it, but I believe, I haven't read it recently, I believe in that case there was a declaration in opposition to the motion. There's another case, however, that is directly on point that was cited in the briefs, and that's the Graff case. In the Graff case, the court held that the motion to compel arbitration had to be granted because the plaintiff had not sustained his burden, his burden of coming forward with evidence showing that he did not assent under California law. That's the same as the law since 1945 that the court in Almasseus announced. This is a summary judgment-like proceeding. Plaintiff, for whatever reason, did not come forward with any evidence, and as a result didn't sustain his burden, and that should have been a full stop. See, I don't really see it that way. I see it that you have to prove the agreement, and the district court said as a matter of law you can't prove an agreement based on the way your assent process works. And, you know, you could set it up a different way so that you could make sure that you had evidence of it. Well, I understand your Honor's argument. Two very quick things. I'm not arguing. I'm just saying how I feel. Okay. I'm going to give you a chance to answer my concerns. Well, when this issue was presented to the court, the Second Circuit had not ruled on Uber v. Meyer, and Uber v. Meyer has a website that's very similar to ours. It does have the two-click rather than one-click. The Second Circuit there held the fact that there were two clicks rather than one was not sufficient to rule that a reasonable user wouldn't be on at least inquiry notice. And, again, here we believe that's true, and we believe he was on actual notice. But the key for the court, I believe, and Justice Tshima referenced this, is that at a bare minimum there is a factual dispute about whether or not respondent had actual notice or even inquiry notice. And I don't think the court was permitted under those circumstances to rule as a matter of law that he did not. At a minimum, or at most that can be said, is because he didn't come forward with any evidence himself, based on the only evidence the district court had, the only inference that could be given was that he did agree to each of the agreements on the terms and conditions web page, including the user agreement. All right. Thank you, counsel. You're well over your time. The case of McGee v. North American Bank Card is submitted.  Thank you, counsel.
judges: Tashima, Wardlaw, Pratt